Paul Alessio Mazzina is here for the appellate, Emory University. James A. Francis is here for the appellee, Mark Schultz, on behalf of the class. And Mr. Mazzina, you may begin when you're ready. Thank you, Your Honor. May it please the Court, in March of 2020, to keep its students and faculty safe from the global pandemic, Emory University transitioned to online learning for the last seven weeks of the semester. Plaintiff is the father of a former Emory student. He claims that Emory breached an implied contract that required it to hold classes in person no matter what. The district court allowed the plaintiff to represent a class consisting of everyone who made a tuition payment to Emory for the spring 2020 semester. I want to focus on three reasons why that was an abuse of discretion. First, the court assumed that plaintiff could prove the terms of every class member's implied contract with Emory using common evidence, even though they presented no evidence of any uniform set of communications or interactions between Emory and every tuition payer. Second, the district court failed to address serious problems with plaintiff's theory of class-wide damages, including that it ignored critical evidence of the market value of the education Emory provided, and it also violated the educational malpractice doctrine. Third and finally, the district court said that it had, quote, serious doubts about whether this case would even be manageable as a class action, but it certified the class anyway without resolving those doubts first, which is what this court's precedent requires. Why shouldn't we just wait and allow the district court to rule on what I understand is a motion that it has construed to decertify the class? So, Your Honor, our view as we explain ourselves on the reach, we think the best reading of the Supreme Court's decision in Coinbase from last term is that the district court lacks jurisdiction over that motion while the appeal is pending in this court. The Supreme Court said... Right, so we would maybe dismiss the appeal or hold the appeal in abeyance and remand so that the district court could just do that. So outside of the district court perhaps not having jurisdiction right now, why shouldn't we follow the steps I just described? So, Your Honor, I certainly urge the court not to dismiss the appeal. There are a number of important issues that are presented in the appeal that are not being reconsidered. In fact, none of the issues we've raised on the merits are being reconsidered by the court. The court is considering decertifying based on evidence that was presented subsequently. I think if the court is really concerned about that, one avenue you could take is to retain jurisdiction and invite the district court to issue an indicative ruling under Rule 62.1 on what the court has construed as the motion to decertify. But I think it's important because if the court denies that motion to decertify and maintains the class, we have very substantial grounds to argue that that was an abuse of discretion. The court already has a petition on those grounds, so we would urge the court to at a minimum retain jurisdiction. Well, that motion's been pending for a long time. Maybe the judge is waiting. Maybe the district court is waiting on us. I think that's very possible, Your Honor. I think the court may have figured out that it probably lacked jurisdiction over that motion, or it may just have exercised its discretion. But either way, I think as this court said in Prado-Steinman, these issues are pending not only here, but they're relevant to many other cases that have been brought against many other universities. I think the bench and bar would benefit from this court's guidance on the issues presented. Okay. So just to start with the first issue, which relates to how do you prove the terms of these implied contracts, I think the decision that came out last Friday in the LSU case speaks directly to this issue. We submitted that as supplemental authority on Monday morning. This is a case in Louisiana where the trial court certified a class of LSU students bringing similar implied contract claims against LSU. The court of appeals there, applying the same standards that apply under federal law, held that that was an abuse of discretion because the class spanned all of the different undergraduate and graduate schools and degree programs at LSU. There was no evidence that there were any uniform representations or written communications. And so the court said you would necessarily have to prove the terms of those contracts using individualized evidence. Here, this case is even less cohesive. I'm sorry, this class is even less cohesive. We could send it back and have the district court narrow the class to just students, couldn't we? Since here, I mean, Schultz is a parent, right? And so there's parents and grandparents pay tuition for their kids and others pay tuition for their kids. We could, I mean, if we accept your argument that the class as certified is unmanageable, vacate and remand it back to the district court to narrow the class. We could, couldn't we? Your Honor, I think you obviously could do that depending on what the court thought the problem was. In the LSU case, the court held that even a class limited to students would not be appropriate for class treatment because even as the students, you would still need to do individualized inquiries into what written or oral representations every student heard and relied on, what programs they were participating in and what expectations they had. So I think that case shows that even a student class wouldn't work. But here, of course, the class includes all tuition payers. So you've got grandparents, relatives, scholarship providers, all of whom are even less likely to have any uniform set of interactions or understandings involving Emory. But here, isn't the in-person and online instruction provided at the same cost to all students? Even before the pandemic? That's exactly right, Your Honor. And you're anticipating my next argument, which is even if there was a breach of an implied contract to provide in-person education, there are really serious problems with plaintiff's market value damages model. One of those problems, which the district court didn't address at all, is that here we have direct evidence of the market value of the online education Emory provided. One source of that evidence, as Your Honor noted, is that pre-pandemic, Emory had no price differential between its online and equivalent in-person offerings. Another really compelling piece of evidence is... But was there an online program for every single type of program that Emory offered? No, Your Honor. So just looking at the examples where there was an online and equivalent in-person. And so, I mean, you know, I think probably it's fair to say that when you're talking about a place like Emory, certainly a lot of undergraduate students go there for the in-person experience, right? They may, Your Honor. Well, they do. Well, Your Honor, I think what's really telling... It's not even offered online, right? I mean, so... It hasn't historically, but it was in fall of 2020. So if you look at what happened in the fall semester, the very next semester, at this point, students are told classes are very likely going to be online. In fact, they were online. The pandemic was still going on. And students were told there is not going to be any reduction in tuition. So if you sign up for the fall 2020 semester, you are agreeing to pay the same tuition for online education. More than 90% of students, including plaintiff's daughter, chose to re-enroll on those terms. So as other courts have recognized, that is direct evidence that the market value... So here's the other kind of issue that concerns me a little bit. It seems like you're advocating for us to consider the merits, really, at this point, when we're supposed to be talking about whether class certification was appropriate, which is not a merits determination. Why is that not the case? Thank you, Your Honor. I want to be very clear about this. We're not trenching on merits in any way that's not relevant to class certification. So the district court held, under the predominance inquiry, that plaintiff needed a class-wide damages model to establish predominance. The court held that on the facts here, without a class-wide damages model, individual issues would predominate. So we're addressing whether plaintiffs proffered... They didn't actually proffer a model, proffered sort of two generalized methodologies that they said could be used to develop a model. But we're arguing about whether that class-wide approach is actually legally viable. Now, if it's not, obviously, that's also a problem on merits. You could potentially have plaintiffs pursue more individualized damages claims. For example... It sounds like you're speaking more about an affirmative defense, like impracticability or impossibility. Not at all, Your Honor. Whether the class-wide damages model is legally viable is plaintiff's burden. Plaintiff has the burden of showing predominance. The district court said common issues do not predominate unless there is a way of formulaic issues to calculate damages across the entire class. So that was plaintiff's burden to establish this approach to damages works. Can the district court decertify the class after liability is established? So that the individuals that you just described can now go after their individual damages, that that can be left for another day? Your Honor, the district court didn't consider, the plaintiffs didn't put forward any plan where this would somehow be, you know, a partial class certification, where it would be limited to liability or something like that. So there was no explanation or analysis by the district court of whether an approach like that was viable. What the district court did is it said, I recognize, I hold that a class-wide damages model is needed here. Plaintiffs don't challenge that. And then it said plaintiffs have presented so few arguments about damages that it comes very close to abandonment of the issue. The district court then said, because there are competing expert reports on the subject, that's enough to carry plaintiff's burden. Now that's clearly an abuse of discretion. That's the same reason the similar class was vacated in Edelman v. Bradley University. It's the same reason this court reversed in Shear v. Raytheon. The district court has to actually analyze the experts' competing arguments and see if this class-wide approach to damages would work. It doesn't for the reason I already talked about, which has to do with the direct evidence of market value, but also, really importantly, because of the educational malpractice doctrine. So as the court knows, this is the rule in Georgia and many other states that we don't want courts and juries second-guessing the quality of a university's academic and educational program. Here, the district court said at the motion to dismiss stage, plaintiff can prove breach without any following. But it didn't be examined at the damage stage. As the Seventh Circuit said in Hernandez, even where a claim like this survives a motion to dismiss, plaintiff's damages theory may collapse into educational malpractice. That's exactly what happened here. If you look at plaintiff's experts' report on damages, it is run through with claims that Emory's online education was inferior to its in-person education. Just quoting from his summary of his opinions at page 10, this is docket 78-4. He says the online experience Emory offered was inferior to the in-person experience. And he goes on like that throughout the report. If there were a trial based on this approach to class-wide damages, it would inevitably be all about Emory having to defend the quality of the education it provided in spring of 2020, which is exactly what this doctrine tries to avoid. Can I just ask you a more directed question? Did Emory make representations to any individual class members that would suggest an implied contract that was breached when the classes went online? Your Honor, we don't believe they did. But I think the question is not do we have, you know, do we have good defenses to every class member. Right. But so if Emory thinks it did not, then why is there any need for an individualized assessment of which materials class members saw? So, Your Honor, class defendants' imputed class actions often think that none of the class members' claims will succeed. I think the question for class certification is if those claims were to proceed to trial, what kind of evidence would the class members have to rely on? And here, any class member who was trying to prove a breach of an implied contract would have to present this individualized evidence about what representations did that class member hear and rely on? What is the basis for that class member's belief that they have this implied contract with Emory? All right. You've reserved some time. Thank you, Mr. Mazzino. We'll hear from Mr. Francis on behalf of Schultz. Thank you and good morning, Your Honors. May it please the Court, Jim Francis for the appellee, Mark Schultz. The District Court acted with its discretion in granting class certification in its June 15, 2023, opinion and order. As evidenced by the decision, the Court carefully and methodically analyzed each of the Rule 23A and B3 elements. It also faithfully applied the binding precedent of this Court and Georgia law as it relates to contract formation and doctrine. So, actually, I have a question of something that concerns me on the predominance issue. It seems like, you know, the Court went through in its analysis with respect to the fees why there wasn't predominance, that there were, you know, people who used some facilities and other people who didn't use the facilities, the gym, whatever, and you wouldn't have predominance. I don't see the Court having gone through a similar analysis with respect to tuition, and maybe I missed it, so maybe you can direct me to it if you see it, but if the Court did not do that, is that a problem? Is that a reason why we should either allow the Court to consider the decertification motion and hold this in abeyance or else decide the issue ourselves and remand it to the District Court to explain the basis for its ruling on predominance? So, if I may answer that question in reverse, Your Honor, and going back to an earlier question, I think the Court really should consider whether or not it should either stay this appeal and let the Court resolve the decertification motion or dismiss the appeal as being improvidently granted, but, and I think Your Honors are correct, that Judge Thrash thinks that he does not have jurisdiction to rule upon the decert motion, and I think one of the things that is important here is that there is a record before the District Court and facts and evidence regarding notice and defendant's records and how to identify class numbers that was not before the Court at the time of certification. So, I think it would be improper for this Court to make any ruling upon the manageability part of this analysis until Judge Thrash has had that opportunity. To answer the first part of your question, Judge Rosenbaum, I think that there is a difference between fees and tuition. The plaintiff's expert and economist damage model assesses why tuition is capable of being proved on a class basis, but the Court was not persuaded the same way with fees because fees, according to the Court's analysis, and, you know, we're disappointed that the Court did not certify that part of the case, which I think actually weighs in favor why the Court did not abuse its discretion because it was very careful here, and credited a lot of Emory's arguments, but the Court looked at the fees as being usage-based, whether somebody used something or not. Here, the damages analysis and theory is simply that what Emory charged for was the Emory in-person experience, and instead what it delivered, through no fault of its own, we're not criticizing the decision to close the campus in March of 2020, but what it delivered was an economically different product. So that's... But doesn't that speak to the educational malpractice that you're getting into the merits as opposed to not getting there at all, at this stage at least? And I think the answer is no, and it's a distinction. It's a distinction between there's not an allegation here that the information and the words and the teaching that was being conducted online, that that information was less valuable in some way than the information that the people were getting. It's the in-person campus experience. It's all of the intangibles that go with being with your... being in person with the professor, being with students, having the Emory experience. We think one of the main pieces of evidence that's very strong here is Emory requires its first and second year students to be on campus. You can't be remote. So we're not criticizing the information that was imparted or that was taught. We're simply saying and simply asserting here, as the district court recognized, that the product as offered through the implied conduct of the university, which is what is relevant for a breach of implied contract claim, not an express contract claim. Here, Georgia law makes it very clear in this court, in the Davidson case, made it very clear that in an implied contract situation, you only look at the conduct of the parties, not the words, not the language. And that's what the district court here found. And that's... No, it's okay. Are you aware of any case where this circuit has certified a class in an implied contract action? I am not, Your Honor. Should that cause us any concern? I don't think so. I don't think so. I think the cases the district court relied upon here are squarely the right cases. And again, the district court faithfully follows the court's precedents in Davidson and Ray Cooper and Cariolo and Cherry and Renssel. The district court, I think, did a really model analysis. It's really a tutorial on how courts should approach class cert decisions. I think the fact that the court changed the class definition that we proposed, it credited Emory's arguments, it declined certification of the money and had claim, and it ordered plaintiff to identify, specifically how we intend to identify the class and all of those things, I think, are evidence of how careful the court was. How do you, I mean, I guess the difficulty in determining class members for damages purposes, you've got 529 anonymous payers. How do you determine who the tuition payers are so that you have an administratively feasible and manageable way of determining class members for damages purposes? Great question, Your Honor. A lot of that is already before the district court in the supplemental briefing. We do believe, based upon the record and what we understand now through Emory's records, that we can identify those people. That there are, number one- You can identify the anonymous payers? Yes, because any time, so the anonymous payers are likely either those individuals who made payments on behalf of a student, obviously, like a grandparent or a parent, or some other person, which is very, very, very unusual. And if the court finds that that particular group is problematic, and maybe the district court cuts those out of the class definition, which it certainly has the power to do under Rule 23. But from what we understand through the testimony and the current record before the district court, they have copies of every check which identifies where it came from, which student it was for, and who it came from. That there aren't anonymous payments out there. And that those records can be obtained. Also, Your Honor, I would also assert that while there are emails that this school has beyond student emails, and whenever a student were to authorize a parent or a grandparent or somebody to make payments on behalf of that student, they have to create an authorized user account for that student. And in that authorized user account, that's associated with that person. So we can provide notice to those people through email. I hope that answers the court's question. As far as the- So in terms of the breach of implied contract, and predominance finding, the reason that the district court's predominance finding is sound is because A, breach of implied contract is not based upon what was said or what was written or what was communicated in writing. Rather, it's based upon the conduct of the party. In this case, Emery having and holding in-person classes. If you look at the restatement of contract second, one of the things that the restatement identifies, which the district court cites, is a party's usual course of dealing that can establish assent. In this case, the usual course of dealing is Emery's holding classes in person. And the reason that that predominates is because that's not individualized. Emery did that and held classes in person as to every single person. There was no variation that for some people it held classes in person and some people it didn't. Going back to the earlier question, and I think Judge Roosevelt, you identified this correctly, about Emery's program prior to COVID, the fact that there were certain courses you could take online and they charged the same. There was no comparable online program. You could not attend Emery exclusively online prior to COVID. That just wasn't available. So the fact that they might have charged the same for a particular course is not relevant in terms of the damages analysis. The second reason that the district court's predominance finding on the breach of implied contract was sound is that the court, and I'm citing to this court's Davidson case and the Georgia Supreme Court case of extremity healthcare, the question as to whether or not there's assent is an objective one. It's not subjective. The question is whether or not this conduct by a particular party manifests assent to an objective, reasonable person. That's why we don't need to pull individual class numbers here. That's why you don't need to get into idiosyncratic questions and whether student A thought the classes were gonna be online. Student B saw three representations. We're looking at an objective, reasonable person standard and that is what the jury will decide. And I think one of the things that gets lost here is these aren't certification questions, really. They're merits questions. Plaintiff could lose here. The jury could say, I don't think that creates a contract. I don't think, but that's the same for everyone. The jury could find, you know, we don't think they breached, but we lose. That binds all class numbers. It's the same. There is no reason to look into the subjective mindset of each individual class member here. That is not what this court's precedent provides in terms of proving a breach of implied contract. As for the expert testimony and the challenge that plaintiff did not identify a viable damages model, it's just not true. Dr. McCartney's report in the first instance is 52 pages with multiple opinions outlining two specific methodologies for assessing damages. One, a hedonic regression and one, the conjoint analysis. Two well-known damages models that apply and are used all over the country in connection with price premium damages model. They're used in connection with whether a product label is organic rather than the product that's not, whether there's a price premium for that. These are well-accepted economic models. So can I ask you a question about that? It wasn't clear to me that the district court explained in its order why it thought that these models reflected on the issues or the legal claims in this case. Do you want to just address that for a moment? Yes, Your Honor. As this court's precedent has to the Green-Cooper case as well as the Cariolo case, what matters is that the methodologies and the damages models that are offered at certification are consistent with the plaintiff's theory of liability. The court did note that and it did find that. Here, unlike the Comcast case... Why did it find that? It found it because here, if you look at the complaint and the district court looked at the complaint's allegations, the complaint all along has been that the plaintiffs here, the class members, didn't get the benefit of the bargain and that Emory charged a certain price for a certain product and didn't deliver that and delivered a different product in the spring of 2020. And the conjoined analysis and the hedonic regression analyses offered by Dr. McCartney are designed to figure out the benefit of the bargain loss, the price premium. So the model is consistent with the plaintiff's theory of liability. I also point out for the court that I think got a little bit lost here, at Emory's insistence, discovery was bifurcated here. Class certification and merits. We weren't allowed to get into each individual class member's payments and who paid what. We were prohibited from doing that based upon this case management order. So that's why I think this court in Green-Cooper found that as long as there's a viable damages model that's consistent with the plaintiff's allegations at the class cert stage, that is sufficient to carry the day for a damages model. Now, we're not done at all. Assuming this court either reaffirms or remands for the district court to rule on the decertification motion, we have a lot of homework to do. We have to get all the discovery regarding the class member payments. We have to give that to Dr. McCartney, and then he has to do his analysis down to the T in terms of exactly what the difference was in terms of damages. But we're talking about a case here for which we don't have any merits discovery and they didn't offer us any merits discovery. So we haven't done that analysis. So we think it would be, in A, we're consistent with this circuit's precedent in Green-Cooper, and B, it would be unfair to ask us to do more and ask Dr. McCartney to do more when we don't have that discovery yet. Finally, in terms of the ascertainability, I think we've addressed this. The district court got it right. This court in Cherry made it very, very clear that manageability is not an element of Rule 23. It's not a pre-certification issue. It might relate to manageability, but it's something that happens post-certification, and the district court retains its discretion to decertify if it doesn't think we can identify the class or it becomes unmanageable. But that's a post-certification issue. Well, Cherry isn't, I mean, that's not a per se rule coming out of Cherry. It doesn't necessarily mean that a class has to be certified. Correct, Your Honor. I'm not saying a class has to be certified. What I'm saying is that Cherry does instruct clearly that you don't look at administrative feasibility at the time of certification. And that's why the district court didn't. And it's going to look at that in terms of the manageability aspect post-certification with the identification plan. So for all these reasons, we think the court should affirm or in the alternative, it should remand this appeal to the district court to let it finish its home, do its homework, finish its analysis on decertification. And one of those two, or dismiss this improvidently granted. But there is no abuse of discretion here. Thank you. Thank you, Mr. Francis. Mr. Mazzino, you've reserved some time for rebuttal. Thank you, Your Honor. Just a few points. So I want to start with Judge Rosenbaum. You asked about this court's precedent regarding implied contracts and class actions. I think the most relevant on point precedent is this court's decision in Vega versus T-Mobile. That was a class involving, excuse me, a case involving a putative class of T-Mobile sales employees claiming breach of an implied contract. There was no uniform set of representations across the class. And so the court said class treatment was inappropriate and an abuse of discretion because the class members would have to present individualized evidence about the particular facts and circumstances allegedly giving rise to their particular implied contracts. That case deals with implied and fact contracts under Georgia law in the classificant? It is under Florida law, Your Honor, but I don't think there's any relevant differences between the two states' laws. Second, I want to address plaintiff's point about conduct. Plaintiff, and this is how the district court dealt with the lack of any uniform class-wide representations, is to say, it said, we'll try this just based on conduct. First of all, there is no uniformity even as to the conduct, except at the highest possible level of generality. Remember, this is a class not only of students across all nine academic units, graduate schools, undergraduate schools, different degree programs. It also includes all tuition payers. So you've got grandparents, relatives, local Key Club or Kiwanis Club that paid a scholarship, all of which may have no understanding or experience at all of what Emory's customary practice is. And in terms of the level of generality... He says they can identify every payor. Every payor can be identified, even the anonymous payors, because they wrote a check. And so they know who they are. No, and to be clear, I think that goes to the issue of manageability rather than the terms of the implied contract. But we absolutely disagree with that. My friend said that Emory has the email of every person who made a tuition payment. That's absolutely not true. The record is very clear on this. Most tuition payments are made through the online OPUS system, which does not record the email. But in any case, I mean, your colleague did say that in the worst case scenario, those who couldn't be identified as payors could just be excised from the class. Why isn't that a solution? Your Honor, this is the first time that that's been suggested. I mean, it seems pretty obvious, though, right? So it might be, Your Honor. I'll be honest, I haven't considered that and I don't want to concede anything or lie, but I want to be clear about what's before this court on manageability. We do disagree about characterization of the evidence, but we don't think that's before this court. The issue we've raised on manageability relates to timing. This court said in Brown v. Electrolux, a district court errs as a matter of law if it doesn't resolve all doubts about the propriety of class certification before certifying the class. That's exactly what the district court here did. It said, I have serious doubts, but I'm going to defer them until after class certification. That's error as a matter of law under Brown. If there are no more questions, we ask the court to reverse. Thank you. All right. Thank you, counsel.